**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **MICHELE BACUS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br>Plaintiff,<br>v.<br>**23ANDME, INC.**<br>Defendant. | Case No.<br>Assigned to Hon. |

**DECLARATION OF KEVIN J. QUILTY**

I, Kevin J. Quilty, declare:

1. I am over 21 years old, a resident of Chicago, Illinois, admitted to the Illinois Bar and the General Bar of the United States District Court, Northern District of Illinois (Bar No. 6332108)

2. My firm is counsel for Defendant 23andMe, Inc.

3. I make this declaration in support of 23andMe, Inc.'s contemporaneously filed Notice of Removal of Civil Action.

4. Attached hereto and incorporated herein by this reference as **Exhibit 1** is a true and correct copy of the pleadings of which I am aware in the Circuit Court of Cook County, Illinois, Case No. 2023 L 011549.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of December 2023 at Chicago, Illinois

By: */s/ Kevin J. Quilty*
Kevin J. Quilty

# EXHIBIT 1

**(Pleadings from the State Court Action)**

Law Division Motion Section Initial Case Management Dates for CALENDAR N (if applicable) will be heard In Person.
All other Law Division Initial Case Management Dates will be heard via Zoom
For more information and Zoom Meeting IDs go to https://www.cookcountycourt.org/HOME?Zoom-Links?Agg4906_SelectTab/12
Court Date: 1/16/2024 9:15 AM

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Courts.
Forms are free at ilcourts.info/forms.

For Court Use Only

STATE OF ILLINOIS,
CIRCUIT COURT

Cook COUNTY

## SUMMONS

FILED
11/13/2023 4:06 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L011549
Calendar, N
25186968

FILED DATE: 11/13/2023 4:06 PM 2023L011549

| Instructions ▼ | |
|---|---|
| Enter above the county name where the case was filed. | Michele Bacus<br>**Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | v. |
| Below "Defendants/ Respondents," enter the names of all people you are suing. | **Defendants / Respondents** *(First, middle, last name)*<br>23AndMe, Inc. |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

**Case Number**

2023L011549

# IMPORTANT: You have been sued.

- Read all documents attached to this Summons.
- You MUST file an official document with the court within the time stated on this Summons called an *Appearance* and a document called an *Answer/Response*. If you do not file an *Appearance* and *Answer/Response* on time, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.
- All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.
- After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efiling. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.
- You may be charged filing fees, but if you cannot pay them, you can file an Application for Waiver of Court Fees.
- It is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.
- Need help? Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents. You can also get free legal information and legal referrals at illinoislegalaid.org. All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.
- ¿Necesita ayuda? Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.

## Plaintiff/Petitioner:

**Do not use this form** in these types of cases:

- All criminal cases
- Eviction
- Small Claims
- Divorce
- Order of protection
- Paternity
- Stalking no contact orders
- Civil no contact orders
- Adult guardianship
- Detinue
- Foreclosure
- Administrative review cases

For eviction, small claims, divorce, and orders of protection, use the forms available at ilcourts.info/forms. If your case is a detinue, visit illinoislegalaid.org for help.

**If you are suing more than 1 Defendant/Respondent**, attach an *Additional Defendant/Respondent Address and Service Information* form for **each** additional Defendant/Respondent.

Enter the Case Number given by the Circuit Clerk:________________

FILED DATE: 11/13/2023 4:06 PM 2023L011549

In **1a**, enter the name and address of the first Defendant/ Respondent you are serving. If you are serving a Registered Agent, include the Registered Agent's name and address here.

**1. Defendant/Respondent's address and service information:**

a. Defendant/Respondent's primary address/information for service:

Name *(First, Middle, Last)*: 23AndMe, Inc.

Registered Agent's name, if any: Corporation Service Company

Street Address, Unit #: 251 Little Falls Drive

City, State, ZIP: Wilmington, DE 19808

Telephone: (302) 636-5401 Email: ________

In **1b**, enter a second address for the first Defendant/ Respondent, if you have one.

b. If you have more than one address where Defendant/Respondent might be found, list that here:

Name *(First, Middle, Last)*: ________

Street Address, Unit #: ________

City, State, ZIP: ________

Telephone: ________ Email: ________

In **1c**, check how you are sending your documents to this Defendant/ Respondent.

c. Method of service on Defendant/Respondent:

☐ Sheriff ☐ Sheriff outside Illinois: ________ *County & State*

☑ Special process server ☐ Licensed private detective

Check here if you are serving more than 1 Defendant/ Respondent. Attach an *Additional Defendant/ Respondent Address and Service Information* form for each additional Defendant/Respondent and write the number of forms you attached.

☐ **I am serving more than 1 Defendant/Respondent.**

I have attached ________ (*Number*) *Additional Defendant/Respondent Address and Service Information* forms.

In **2a**, enter the amount of money owed to you. Check **2b** if you are asking for the return of tangible personal property.

**2. Information about the lawsuit:**

a. Amount claimed: $ > $50,000

☐ b. I am asking for the return of tangible personal property (items in the Defendant/Respondent's possession).

In **3**, enter your complete address, telephone number, and email address, if you have one.

**3. Contact information for the Plaintiff/Petitioner:**

Name *(First, Middle, Last)*: Andrea R. Gold - Counsel for Plaintiff Michele Bacus

Street Address, Unit #: 2000 Pennsylvania Ave NW, Suite 1010

City, State, ZIP: Washington, DC 20006

Telephone: (202) 973-0900 Email: agold@tzlegal.com

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*. To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: ilcourts.info/forms. |
|---|---|

Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**.

**4. Instructions for person receiving this *Summons (Defendant)*:**

☑ a. To respond to this *Summons*, you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service)* by e-filing or at:

Address: 50 West Washington Street

City, State, ZIP: Chicago, IL 60602

FILED DATE: 11/13/2023 4:06 PM 2023L011549

In **4a,** fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response*.

In **4b,** fill out:
- The court date and time the clerk gave you.
- The courtroom and address of the court building.
- The call-in or video information for remote appearances (if applicable).
- The clerk's phone number and website.

All of this information is available from the Circuit Clerk.

☐ b. Attend court:

On: ______________ at ______________ ☐ a.m. ☐ p.m. in ______________
*Date* *Time* *Courtroom*

**In-person at:**

______________________________________________
*Courthouse Address* *City* *State* *ZIP*

OR

**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):

By telephone: ______________________________
*Call-in number for telephone remote appearance*

By video conference: ______________________________
*Video conference website*

______________________________
*Video conference log-in information (meeting ID, password, etc.)*

Call the Circuit Clerk at: ______________________ or visit their website
*Circuit Clerk's phone number*

at: ______________________ to find out more about how to do this.
*Website*

**STOP!**
The Circuit Clerk will fill in this section.

**Witness this Date:** 11/13/2023 4:06 PM IRIS Y. MARTINEZ

**Clerk of the Court:** ______________________

*Seal of Court*

CIRCUIT COURT OF COOK COUNTY ILLINOIS

**STOP! The officer or process server will fill in the Date of Service**

**Note to officer or process server:**

- If 4a is checked, this *Summons* must be served within 30 days of the witness date.
- If 4b is checked, this *Summons* must be served at least 40 days before the court date, unless 2b is also checked.
  - If 4b and 2b are checked, the *Summons* must be served at least 3 days before the court date.

Date of Service: ______________________
*(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)*

FILED DATE: 11/13/2023 4:06 PM 2023L011549

Enter the Case Number given by the Circuit Clerk: _______________

This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts.
Forms are free at ilcourts.info/forms.

| STATE OF ILLINOIS, CIRCUIT COURT<br>Cook COUNTY | PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | For Court Use Only |
|---|---|---|

| Instructions | | |
|---|---|---|
| Enter above the county name where the case was filed. | Michele Bacus<br>**Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v.<br>23AndMe, Inc.<br>**Defendant / Respondent** *(First, middle, last name)* | |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | **Case Number** |

****Stop. Do not complete the form. The sheriff or special process server will fill in the form. Give them one copy of this blank *Proof of Service* form for each Defendant/Respondent.****

**My name is** _______________ **and I state**
*First, Middle, Last*

☐ **I served the *Summons* and Complaint/Petition on the Defendant/Respondent**

_______________ **as follows:**
*First, Middle, Last*

☐ Personally on the Defendant/Respondent:
☐ Male ☐ Female ☐ Non-Binary Approx. Age: ________ Race: ________
On this date: ________ at this time: ________ ☐ a.m. ☐ p.m.
Address, Unit#: _______________
City, State, ZIP: _______________

☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family member or lives there:
On this date: ________ at this time: ________ ☐ a.m. ☐ p.m.
Address, Unit#: _______________
City, State, ZIP: _______________
And left it with: _______________
*First, Middle, Last*
☐ Male ☐ Female ☐ Non-Binary Approx. Age: ________ Race: ________
and by sending a copy to this defendant in a postage-paid, sealed envelope to the above address on this date: ________ .

☐ On the Corporation's agent, _______________
*First, Middle, Last*
☐ Male ☐ Female ☐ Non-Binary Approx. Age: ________ Race: ________
On this date: ________ at this time: ________ ☐ a.m. ☐ p.m.
Address: _______________
City, State, ZIP: _______________

FILED DATE: 11/13/2023 4:06 PM 2023L011549

☐ **I was not able to serve the *Summons* and Complaint/Petition on Defendant/Respondent:**

______________________________________________

*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1. On this date: ______________ at this time: ________ ☐ a.m. ☐ p.m.
   Address: ______________________________
   City, State, ZIP: ______________________________
   Other information about service attempt: ______________________________
   ______________________________
   ______________________________
   ______________________________

2. On this date: ______________ at this time: ________ ☐ a.m. ☐ p.m.
   Address: ______________________________
   City, State, ZIP: ______________________________
   Other information about service attempt: ______________________________
   ______________________________
   ______________________________
   ______________________________

3. On this date: ______________ at this time: ________ ☐ a.m. ☐ p.m.
   Address: ______________________________
   City, State, ZIP: ______________________________
   Other information about service attempt: ______________________________
   ______________________________
   ______________________________
   ______________________________

**DO NOT** complete this section. The sheriff or private process server will complete it.

**If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.**

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

**By:**

______________________________

*Signature by:* ☐ Sheriff
☐ Sheriff outside Illinois:

______________________________

*County and State*

☐ Special process server
☐ Licensed private detective

______________________________

*Print Name*

**FEES**

Service and Return: $ ________
Miles ________ $ ________
Total $ 0.00

If *Summons* is served by licensed private detective or private detective agency:
License Number: ______________________

Law Division Motion Section Initial Case Management Dates for CALENDARS (A,B,C,D,E,F,H,R,X,Z) will be heard In Person.
All other Law Division Initial Case Management Dates will be heard via Zoom
For more information and Zoom Meeting IDs go to https://www.cookcountycourt.org/HOME?Zoom-Links?Agg4906_SelectTab/12
Court Date: 1/16/2024 9:15 AM

**12-Person Jury**

Civil Action Cover Sheet - Case Initiation (12/01/20) CCL 0520

FILED
11/13/2023 4:06 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L011549
Calendar, N
25186968

FILED DATE: 11/13/2023 4:06 PM 2023L011549

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
# COUNTY DEPARTMENT, LAW DIVISION

Michele Bacus, individually and on behalf of all others similarly situated

v.

23AndMe, Inc.

No. 2023L011549

## CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate case type which best characterizes your action. Only one (1) case type may be checked with this cover sheet.

Jury Demand ☒ Yes ☐ No

(FILE STAMP)

**PERSONAL INJURY/WRONGFUL DEATH**

CASE TYPES:
- ☐ 027 Motor Vehicle
- ☐ 040 Medical Malpractice
- ☐ 047 Asbestos
- ☐ 048 Dram Shop
- ☐ 049 Product Liability
- ☐ 051 Construction Injuries (including Structural Work Act, Road Construction Injuries Act and negligence)
- ☐ 052 Railroad/FELA
- ☐ 053 Pediatric Lead Exposure
- ☐ 061 Other Personal Injury/Wrongful Death
- ☐ 063 Intentional Tort
- ☐ 064 Miscellaneous Statutory Action (Please Specify Below**)
- ☐ 065 Premises Liability
- ☐ 078 Fen-phen/Redux Litigation
- ☐ 199 Silicone Implant

**TAX & MISCELLANEOUS REMEDIES**

CASE TYPES:
- ☐ 007 Confessions of Judgment
- ☐ 008 Replevin
- ☐ 009 Tax
- ☐ 015 Condemnation
- ☐ 017 Detinue
- ☐ 029 Unemployment Compensation
- ☐ 031 Foreign Transcript
- ☐ 036 Administrative Review Action
- ☐ 085 Petition to Register Foreign Judgment
- ☐ 099 All Other Extraordinary Remedies

**COMMERCIAL LITIGATION**

CASE TYPES:
- ☐ 002 Breach of Contract
- ☐ 070 Professional Malpractice (other than legal or medical)
- ☐ 071 Fraud (other than legal or medical)
- ☐ 072 Consumer Fraud
- ☐ 073 Breach of Warranty
- ☒ 074 Statutory Action (Please specify below.**)
- ☐ 075 Other Commercial Litigation (Please specify below.**)
- ☐ 076 Retaliatory Discharge

**OTHER ACTIONS**

CASE TYPES:
- ☐ 062 Property Damage
- ☐ 066 Legal Malpractice
- ☐ 077 Libel/Slander
- ☐ 079 Petition for Qualified Orders
- ☐ 084 Petition to Issue Subpoena
- ☐ 100 Petition for Discovery

** Genetic Information Privacy Act (GIPA), 410 Ill. Comp. Stat. Ann. 513

Primary Email: agold@tzlegal.com

Secondary Email: ______

Tertiary Email: ______

By: Andrea R. Gold
(Attorney) (Pro Se)

**Pro Se Only:** ☐ I have read and agree to the terms of the *Clerk's O ice Electronic Notice Policy* and choose to opt in to electronic notice form the **Clerk's Office** for this case at this email address: ______

**IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FILED
11/13/2023 4:06 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L011549
Calendar, N

FILED DATE: 11/13/2023 4:06 PM 2023L011549

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT
COOK COUNTY, ILLINOIS**

**MICHELE BACUS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**

***Plaintiff,***

**v.**

**23ANDME, INC.,**

***Defendant.***

**Case No.:** 2023L011549

**Judge:**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Michele Bacus, individually and on behalf of all others similarly situated, alleges as follows against Defendant 23andMe, Inc. ("23andMe"), based upon personal knowledge as to herself and, as to all other matters, upon information and belief, including her counsel's investigation.

## INTRODUCTION

1. 23andMe provides a service to consumers that allows them to learn information about their ancestry and genetic predisposition to a variety of medical conditions and traits through DNA testing.

2. In October 2023, 23andMe disclosed that hackers accessed profile information from its customers' accounts—including information on their DNA ancestry and relatives derived from genetic testing and other personal identifying information ("PII"). According to 23andMe, it suspects the attackers used a common and well-known hacking technique called "credential-stuffing"—trying combinations of usernames or emails and corresponding passwords that are already public from other data breaches to break into users' accounts on a large scale and then harvesting data from those accounts.

FILED DATE: 11/13/2023 4:06 PM   2023L011549

3.      The data exposed and stolen in this breach includes names, sex, date of birth, profile photos, information on where customers lived, and a variety of genetic information including the person's genetic heritage, ancestral origin, and DNA relatives.

4.      Thus far, 23andMe has not shared additional details regarding the breach, such as the date it occurred, how many users have been affected, the full extent of the breach, or other crucial information that would allow its customers to remediate the breach. However, millions of records have already been shared on internet cybercrime forums and offered for sale. The hackers have offered specific collections of data from consumers of Ashkenazi Jewish ancestry, indicating that the attack targeted people of certain genetic origins and that the data will be sold to those seeking to use it for harmful purposes.

5.      Although the breach appears to have happened months ago, 23andMe did not disclose the breach until after the information began appearing online, and 23andMe has still not disclosed when the breach occurred, its duration, or how many people it affects (or potentially affects). The only thing that is clear is that a large percentage of 23andMe's 14 million subscribers are victims of the breach.

6.      Credential stuffing is one of the most common and well-known hacking techniques, with such attacks comprising huge percentages of all login traffic on e-commerce websites. Thus, 23andMe had actual and/or constructive notice of the need to implement measures to protect against this type of attack. There are multiple, widely available processes and tools available to combat credential stuffing, and they are commonly known and widely employed in the cybersecurity industry. But 23andMe failed to implement adequate safeguards. Such protection is the reasonable standard of care for a company entrusted with its customers' data—particularly companies like 23andMe entrusted with highly sensitive data such as genetic and health information.

FILED DATE: 11/13/2023 4:06 PM 2023L011549

7. Plaintiff brings this action to remedy the violation of her right to privacy in her genetic information and the confidentiality of her PII. 23andMe's negligent and reckless conduct has led to a release of Plaintiff's genetic information that, in addition to being a breach of privacy, puts her at risk of targeting by nefarious actors based on her ancestry and even potential discrimination on the internet, in the workplace, and other places. The breach also compromises the value of her account data. In addition, because the full scope of the breach, the number of consumers affected, the extent of the data stolen, the specific technique used to perpetrate it, and the steps taken to remedy the breach and prevent further future breaches are all unclear, Plaintiff has reasonably spent time and money taking additional steps to protect herself from the potential harmful results of the breach. These harms are the direct result of 23andMe's failure to adequately safeguard the sensitive genetic information, PII, and other highly sensitive and confidential information hosted on its website.

8. Plaintiff accordingly brings this class action lawsuit on behalf of herself and other similarly situated consumers to remedy 23andMe's inadequate safeguarding of its customers' data, the resulting breach that allowed this sensitive information to fall into the hands of identity thieves, and 23andMe's failure to timely and adequately disclose the breach exposing such information. Plaintiff brings claims for violation of the Illinois Genetic Information Privacy Act (GIPA), 410 ILCS 513 *et seq.*; negligence; breach of contract; unjust enrichment; and injunctive and declaratory relief.

**PARTIES**

9. Plaintiff Michele Bacus is an Illinois citizen who, at all times material hereto, was a resident of Chicago, Illinois. As discussed in more detail in Paragraphs 57-65, Plaintiff is one of millions of consumers whose DNA Relatives profile and other confidential information was exposed in the breach of 23andMe's information platform, which 23andMe first disclosed on October 6, 2023.

10. 23andMe is a corporation organized under the laws of the State of Delaware. 23andMe's principal place of business is in South San Francisco, California. 23andMe transacts

FILED DATE: 11/13/2023 4:06 PM 2023L011549

business with consumers across the country, including in Illinois, by, *inter alia*, distributing and receiving DNA test kits and performing paid testing services for consumers.

## JURISDICTION & VENUE

11. Jurisdiction is proper in this Court because Plaintiff is a citizen of Illinois and 23andMe purposefully availed itself of the laws, protections, and advantages of Illinois by conducting business in this State, including but not limited to the promotion, sale, marketing and distribution of its at-home genetic testing kits and its interaction with residents of this State on its website; 23andMe committed tortious acts in this State through its data security practices affecting the privacy of the genetic information of Illinois residents; 23andMe caused injury to persons within this State; and a substantial portion of the actions giving rise to the claims took place in this State.

12. Venue is proper in this Court pursuant to 735 ILCS 5/2-101 because the transactions or some part thereof out of which this cause of action arose occurred in this county.

## FACTS

13. Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

## GENERAL ALLEGATIONS

### I. 23andMe offers a direct-to-consumer genetic testing service.

14. 23andMe's genetic testing service uses single nucleotide polymorphism genotyping to generate information on a customer's ancestry, ancestral origin, DNA relatives, and health traits and predispositions. Single nucleotide polymorphisms, which are frequently called "SNPs," are differences in DNA building blocks representing the most common genetic variation in humans. SNPs can be used as biological markers to locate genes associated with various diseases and construct ancestral lineages.

15. According to 23andMe's website, its testing method involves extracting DNA from cells in a customer's saliva sample and then "process[ing] the DNA on a genotyping chip that reads

FILED DATE: 11/13/2023 4:06 PM 2023L011549

hundreds of thousands of variants in your genome." This processing allows 23andMe to "generate your personalized reports based on well-established scientific and medical research."

16. 23andMe offers two categories of reporting based on its testing method: an ancestry reporting service and a health reporting service. Consumers can choose which service to pay for.

17. On its website, 23andMe describes its ancestry service as follows:

> Our Ancestry Service helps you understand who you are, where your DNA comes from and your family story. We analyze, compile and distill your DNA information into reports on your Ancestry Composition, Ancestry Detail Reports, Maternal & Paternal Haplogroups, Neanderthal Ancestry and provide a DNA Relatives tool to enable you to connect with relatives who share similar DNA.

18. 23andMe's "DNA Relatives" feature is a tool that can be accessed within a customers' 23andMe account. If a customer opts into DNA Relatives, their data is automatically shared with other customers on the platform who have opted in and who have been identified through their genetic testing results as relatives based on shared DNA segments. The information shared through the DNA Relatives feature includes the connected individual's name, date of birth, sex, geographic region, photograph, ancestral origin, and DNA relatives. Specifically, 23andMe states on its website that the following information is shared through the DNA Relatives feature:

- "Your DNA Relatives display name"
- "How recently you logged into your account"
- "Your relationship labels (masculine, feminine, neutral) "
- "Your predicted relationship and percentage of DNA shared with your matches"
- "Your ancestry reports and matching DNA segments (optional)"
- "Your location (optional)"
- "Ancestor birth locations and family names (optional)"
- "Your profile picture (optional)"

FILED DATE: 11/13/2023 4:06 PM 2023L011549

- "Your birth year (optional)"
- "A link to your Family Tree (optional)"
- "Anything you have added to the 'Introduce yourself!' Section (optional)"

19. 23andMe describes its health service as follows:

> Our Health + Ancestry Service provides insights on your health predispositions, carrier status traits, wellness and ancestry. We analyze, compile and distill the information extracted from your DNA into 150+ reports you can access online and share with family and friends.

20. In addition, 23andMe offers a "23andMe+ Premium" program, an annual subscription that offers everything from 23andMe's ancestry and health services plus "exclusive reports and features that can help you learn more about your heart health, how you process certain medications, likelihood for having migraine, and more."

21. 23andMe's services are direct-to-consumer products. Consumers buy a 23andMe test kit, follow the instructions to provide a saliva sample, and ship the product to 23andMe. 23andMe then performs the test and generates the desired reports, which are available within the person's account on the 23andMe's website.

22. According to 23andMe, the company has more than 14 million customers worldwide as of December 2022.

## II. 23andMe stores its customers' sensitive genetic information, information derived from genetic testing, PII, and other confidential and highly sensitive information.

23. As a condition of using 23andMe's genetic testing services, 23andMe requires that Plaintiff and similarly situated consumers entrust 23andMe with highly sensitive genetic information, information derived from genetic testing, health information, ancestral origin, and other confidential and sensitive PII. 23andMe then stores that information in its platform.

24. According to the Privacy Statement on 23andMe's website, the company collects the following categories of customer information:

FILED DATE: 11/13/2023 4:06 PM 2023L011549

- Registration Information, including name, user ID, password, date of birth, billing address, shipping address, payment information, account authentication information, and contact information (such as email address and phone number).
- Genetic information, including "[i]nformation regarding your genotype (e.g., the As, Ts, Cs, and Gs at particular locations in your DNA)" and "the 23andMe genetic data and reports provided to you as part of our Services."
- Sample Information, including "[i]nformation regarding any sample, such as a saliva sample, that you submit for processing to be analyzed to provide you with Genetic Information, laboratory values or other data provided through our Services."
- Self-Reported Information, including "gender, disease conditions, health-related information, traits, ethnicity, family history, or anything else you want to provide to us within our Service(s)."
- User Content, including "[i]nformation, data, text, software, music, audio, photographs, graphics, video, messages, or other materials, other than Genetic Information and Self-Reported Information, generated by users of 23andMe Services and transmitted, whether publicly or privately, to or through 23andMe. For example, User Content includes comments posted on our Blog or messages you send through our Services."
- Web-Behavior Information, including "[i]nformation on how you use our Services or about the way your devices use our Services is collected through log files, cookies, web beacons, and similar technologies (e.g., device

FILED DATE: 11/13/2023 4:06 PM 2023L011549

information, device identifiers, IP address, browser type, location, domains, page views)."

- Biometric Information, including "[c]ertain Self-Reported Information you provide to us or our service providers to verify your identity using biological characteristics."

25. Customer information like that collected by 23andMe is valuable in both legitimate and illegitimate marketplaces.

26. The legitimate marketplace for PII is worth billions of dollars. Companies use information like that collected by 23andMe to identify potential customers, analyze their online browsing, shopping, and content viewing habits, and send tailored advertisements according to their interests and preferences. For example, one study reported that in 2020, marketers spent $12.3 billion on "audience data," which includes the identity of companies' customers, email addresses, shopping behaviors, IP addresses, and other similar information, and they spent $4.4 billion alone on demographic data.[1]

27. Further, criminals place a high value on such data because of its susceptibility to exploitation. A thriving black market for PII exists on the dark web and other illicit internet spaces. Depending on the type of PII stolen, PII can be used in furtherance of many crimes, such as various types of identity theft, phishing attacks, or (as appears to be the case here) simply selling the information to malicious actors who may use it for whatever purpose they choose. Additionally, criminals often hold such information for many years, waiting for the right time to try to exploit it and thus placing consumers at risk long after the original breach.

[1] J.G. Navarro, *U.S. third-party audience data spend 2020, by type and channel*, Statista (Jan. 6, 2023), https://www.statista.com/statistics/818909/us-third-party-data-spend-type/.

FILED DATE: 11/13/2023 4:06 PM 2023L011549

28. The information is also highly sensitive. As Senator Bill Cassidy—a physician and ranking member of the Senate Health, Education, Labor, and Pensions Committee—explained in a letter to 23andMe's CEO concerning the breach, "Genetic information, unlike financial information and other types of identifying information, cannot be changed in response to data breaches. Genetic information is particularly sensitive, carrying health and personally identifying information that can be used against its owners."[2]

29. Moreover, even if the breach did not expose the raw data from customers' genetic testing, the DNA Relatives information that 23andMe has confirmed to have been compromised is information derived from such testing, and it carries significant risks of exploitation. This information can be used to target people based on their ancestry. Senator Cassidy explained that the targeted leak of data on Ashkenazi Jewish and Asian customers "comes at a time of increasing rates of global antisemitism and anti-Asian hate, which can be leveraged to draw higher prices for the information and increase the threat from potential evildoers."[3]

30. The information from the DNA Relatives feature can also be used to profile and discriminate against individuals based on their ancestry. As Senator Cassidy observed:

> Your company's own website describes the potential negative health implications of association with Ashkenazi Jewish ancestry, namely incidence of Gaucher disease, Canavan disease, Tay-Sachs disease, Crohn's disease, and breast, ovarian, and prostate cancer. Such information in the hands of employers, potential employers, foreign governments, hostile actors, and others could be used to discriminate against individuals associated with the group.[4]

31. Moreover, because 23andMe has released few details on the scope of the breach or the data involved thus far, it is unclear whether the breach was limited only to the information

---

[2] Letter from Sen. Bill Cassidy, Ranking Member, Senate Health, Education, Labor, and Pensions Committee (Oct. 20, 2023), https://www.help.senate.gov/imo/media/doc/cassidy_letter_on_23andme_data_leak.pdf.

[3] *Id.*

[4] *Id.*

FILED DATE: 11/13/2023 4:06 PM 2023L011549

contained in the DNA Relatives feature or whether Plaintiff's and other consumers' raw testing data or other information in their accounts (such as more detailed information on their health conditions or genetic ancestry) is secure.

32. 23andMe knew or should have known the importance of safeguarding the PII, genetic information, health information, and other highly sensitive and confidential information with which its customers entrusted it. 23andMe is a large, sophisticated corporation with millions of users across the world. But as evidenced by the breach, 23andMe failed to take reasonable precautions to secure its users' data and failed to timely and adequately inform them of the scope, timeframe, and potential impacts associated with the breach.

## III. Hackers compromise 23andMe's platform.

33. On October 6, 2023, 23andMe posted the following statement on its website:

> We recently learned that certain 23andMe customer profile information that they opted into sharing through our DNA Relatives feature, was compiled from individual 23andMe.com accounts without the account users' authorization.
>
> After learning of suspicious activity, we immediately began an investigation. While we are continuing to investigate this matter, we believe threat actors were able to access certain accounts in instances where users recycled login credentials – that is, usernames and passwords that were used on 23andMe.com were the same as those used on other websites that have been previously hacked.
>
> We believe that the threat actor may have then, in violation of our Terms of Service, accessed 23andMe.com accounts without authorization and obtained information from certain accounts, including information about users' DNA Relatives profiles, to the extent a user opted into that service.

34. In that disclosure, 23andMe recommended that customers use original passwords and implement multi-factor authentication, but it did not require those actions.

35. On October 10, 2023, 23andMe announced that it was requiring all its customers to reset their passwords. Upon information and belief, 23andMe contacted some customers via email to prompt them to change their passwords. However, 23andMe did not email or otherwise contact

FILED DATE: 11/13/2023 4:06 PM 2023L011549

Plaintiff to instruct her to reset her password and, upon information and belief, also did not email or otherwise contact many of its other customers to instruct them to reset their passwords.

36. On October 12, 2023, 23andMe emailed its customers a similar message to the one posted on its blog to inform them of the breach. In that message, 23andMe stated it would contact customers whose data was accessed in the breach "separately with more information." Plaintiff does not know whether 23andMe sent this email to a subset of its customers earlier than October 12, 2023.

37. On October 23 and 24, 2023, 23andMe emailed an unknown number of customers, including Plaintiff, informing them that their data was stolen in the breach. This email stated:

> After further review, we have identified your DNA Relatives profile as one that was impacted in this incident. Specifically, there was unauthorized access to one or more 23andMe accounts that were connected to you through DNA Relatives. As a result, the DNA Relatives profile information you provided in this feature was exposed to the threat actor. . .. Based on our investigation so far, we believe only your DNA Relatives profile attributes were exposed.

38. On November 6, 2023—one month after it disclosed the breach—23andMe announced that it was "requiring all customers use a second step of verification to sign into their account."

39. By this time, multiple tranches of stolen customer information had been posted on the dark web and on internet cybercrime forums.

40. Despite 23andMe's assertion in its October 6, 2023 disclosure that it "immediately began an investigation," at least some of the stolen data involved in the breach appears to have previously been posted for sale on the internet in August 2023.[5] And because 23andMe has provided few details on the breach, it is unclear how long consumers' data has been exposed or how long ago 23andMe detected it.

[5] Lorenzo Franceschi-Bicchierai & Zack Whittaker, *Hackers advertised 23andMe stolen data two months ago*, TechCrunch (Oct. 10, 2023), https://techcrunch.com/2023/10/10/hackers-advertised-23andme-stolen-data-two-months-ago/.

FILED DATE: 11/13/2023 4:06 PM 2023L011549

41. On October 2, 2023, an individual posted a sample of 1 million lines of data from Ashkenazi Jewish individuals on the cybercrime message board BreachForums. The title of the post was "DNA Data of Celebrities (1 million Ashkenazi REPOST!)." Two days later, in a post titled "23andMe – Genetic Data for Sale," a hacker with the alias "Golem" offered to sell 23andMe account data in bulk for $1-$10 per 23andMe account. The hacker claimed that the stolen information included "[t]ailored ethnic groupings, individualized data sets, pinpointed origin estimations, haplogroup details, phenotype information, photographs, links to hundreds of potential relatives, and most crucially, raw data profiles."[6]

42. On October 7, 2023, NBC News reported that a database titled "Ashkenazi DNA Data of Celebrities" was posted on dark web forums; this database contained a list of 999,999 23andMe users, along with their first and last names, sex, and their ancestral origin; the list "appears

[6] Bill Toulas, *Genetics firm 23andMe says user data stolen in credential stuffing attack*, BleepingComputer (Oct. 6, 2023), https://www.bleepingcomputer.com/news/security/genetics-firm-23andme-says-user-data-stolen-in-credential-stuffing-attack/.

FILED DATE: 11/13/2023 4:06 PM 2023L011549

to have been sorted to only include people with Ashkenazi heritage."[7] This list also contained the data for hundreds of thousands of customers of Chinese ancestry.[8]

43. On October 17, 2023, "Golem" published another database including the genetic data profiles of 4.1 million 23andMe users.[9]

44. Each of these tranches contained customers' names, dates of birth, sex, locations, photos, and both genetic and ancestry results.

45. In its disclosure of the breach, 23andMe suggested that its customers were to blame for using recycled passwords, and the company did not accept responsibility for the failure to safeguard its customers' data. Notwithstanding that 23andMe knew or should have known that many consumers use recycled passwords and thus that 23andMe should have implemented safeguards to protect for this, the breach impacted millions of consumers like Plaintiff whose data was exposed through the DNA Relatives feature on 23andMe's platform, *not* because they used recycled passwords, and through no fault of theirs.

## IV. 23andMe had a duty to safeguard its customers' data and provide timely and adequate notice when it was compromised, and it breached that duty.

46. 23andMe had a duty of reasonable care to protect its customers' confidential genetic data, ancestry information, PII, and other data. To quote Senator Cassidy, "[a]s one of the largest

[7] Kevin Collier, *23andMe user data targeting Ashkenazi Jews leaked online*, NBC News (Oct. 7, 2023), https://www.nbcnews.com/news/us-news/23andme-user-data-targeting-ashkenazi-jews-leaked-online-rcna119324.
[8] Aaron Katersky, *Connecticut attorney general presses 23andMe for data breach answers*, ABC News (Oct. 31, 2023), https://abcnews.go.com/US/connecticut-attorney-general-presses-23andme-data-breach-answers/story?id=104510476.
[9] Lawrence Abrams, *Hacker leaks millions of new 23andMe genetic data profiles*, BleepingComputer (Oct. 18, 2023), https://www.bleepingcomputer.com/news/security/hacker-leaks-millions-of-new-23andme-genetic-data-profiles/#google_vignette.

FILED DATE: 11/13/2023 4:06 PM   2023L011549

purveyors of direct-to-consumer genetic tests, 23andMe plays a particularly important role in protecting the identities and privacy of [its] customers."[10]

47.    There have been countless, widespread reports of data breaches involving large corporations that do business online, including (for example) Microsoft in 2019 and 2022, Facebook in 2020 and 2021, Estee Lauder in 2020, LinkedIn in 2021, the Red Cross in 2022, and Caesars Entertainment in September 2023. This did or should have put 23andMe on notice that hackers would target its platform.

48.    Credential stuffing attacks are also common and well known, and there have been numerous recent high-profile credential stuffing breaches. Indeed, in January 2023, a credential stuffing attack impacted nearly 35,000 PayPal account holders. In July 2022, hackers gained access to the personal and purchase information of nearly 195,000 customers of The North Face. And in April 2022, criminals accessed thousands of General Motors customers' accounts and used their reward points to purchase gift cards.

49.    Indeed, credential stuffing is so common that one study estimates that credential stuffing attempts comprise 91% of login traffic on e-commerce websites.[11] Similarly, IT service management company Okta reported that credential stuffing was on a "record pace" in 2022; it observed more than 10 billion credential stuffing attempts on its platform in only the first three months of 2022, which constituted "34% of overall traffic/authentication events" on its platform.[12]

---

[10] Letter from Sen. Bill Cassidy, Ranking Member, Senate Health, Education, Labor, and Pensions Committee (Oct. 20, 2023),
https://www.help.senate.gov/imo/media/doc/cassidy_letter_on_23andme_data_leak.pdf.
[11] Ani Petrosyan, *Share of global login attempts that are credential stuffing attacks 2018, by industry*, Statista (Aug. 25, 2023), https://www.statista.com/statistics/885318/login-attempts-globally-credential-stuffing-attacks-by-industry/.
[12] Nabeel Saeed, *Top Insights From Our 2022 State of Secure Identity Report*, AuthO by Okta (Sept. 21, 2022), https://auth0.com/blog/top-insights-from-our-2022-state-of-secure-identity-report/.

FILED DATE: 11/13/2023 4:06 PM 2023L011549

50. As early as 2017, the Federal Trade Commission (FTC) advised companies to take a series of specific actions to combat credential stuffing attacks, including insisting on secure passwords and implementing multi-factor authentication.[13] Regarding secure passwords, the FTC explained that companies should "think through their standards, implement minimum requirements, and educate users about how to create stronger passwords."[14] As to multi-factor authentication, the FTC explained:

> You've required strong, unique passwords, stored them securely, and logged people out after a number of unsuccessful log-in attempts. But to protect against unauthorized access to sensitive information, that may not be enough. Consumers and employees often reuse usernames and passwords across different online accounts, making those credentials extremely valuable to remote attackers. Credentials are sold on the dark web and used to perpetrate credential stuffing attacks – a kind of attack in which hackers automatically, and on a large scale, input stolen usernames and passwords into popular internet sites to determine if any of them work. Some attackers time their log-in attempts to get around restrictions on unsuccessful log-ins. To combat credential stuffing attacks and other online assaults, companies should combine multiple authentication techniques for accounts with access to sensitive data.[15]

51. This advice—published more than six years before the apparent credential stuffing attack on 23andMe's platform—could have been written specifically as a response to the 23andMe breach. And the FTC is far from the only source of such information. Numerous countermeasures are available to combat credential stuffing attacks, and information on those countermeasures abounds in the public domain and in the cybersecurity industry.

52. In addition to password-complexity requirements and multi-factor authentication, multiple other tools to combat credential stuffing include but are not limited to web-application firewalls that filter, monitor, and block malicious or suspicious traffic or login attempts on a company's network (such traffic can identify large-scale credential stuffing attacks); requiring users to solve a CAPTCHA puzzle to log in; and screening for login credentials (such as usernames and passwords)

---

[13] Thomas B. Pahl, Acting Director, FTC Bureau of Consumer Protection, *Stick with Security: Require secure passwords and authentication*, FTC Business Blog (Aug. 11, 2017), https://www.ftc.gov/business-guidance/blog/2017/08/stick-security-require-secure-passwords-and-authentication.
[14] *Id.*
[15] *Id.*

FILED DATE: 11/13/2023 4:06 PM 2023L011549

known to have been compromised in prior breaches so that customers who do not know their information was previously compromised do not mistakenly use those at-risk credentials again. This is just a sample of the available tools.[16]

53. Prior to the breach, 23andMe did not require its users to enable multi-factor authentication, and any password complexity requirements or CAPTCHA authentication processes it had in place before the breach (if it had any at all) were inadequate to protect its customers from the well-recognized threat of credential stuffing attacks. And while 23andMe has exclusive knowledge over its other data security procedures or systems, it is inferable from the exposure and posting of millions of its customers' data on cybercrime forums that any such procedures or systems (if they existed at all) were woefully inadequate in light of the highly sensitive and confidential information with which its customers entrusted it.

54. Although 23andMe gave consumers the option to enable multi-factor authentication for their accounts, it did not require this and gave its customers minimal notice of this feature prior to the breach.

55. 23andMe knew or should have known that it should have implemented secure password requirements, mandatory multi-factor authentication, and/or other security measures designed to resist credential stuffing attacks. But despite the prevalence of credential stuffing attacks and the availability of these fundamental security precautions, 23andMe did not implement them or inadequately implemented them, even though its platform included some of the most sensitive and confidential information shared by its customers.

[16] *See, e.g.*, Open Worldwide Application Security Project, *Credential Stuffing Prevention Cheat Sheet*, OWASP Cheat Sheet Series, https://cheatsheetseries.owasp.org/cheatsheets/Credential_Stuffing_Prevention_Cheat_Sheet.html (last visited Nov. 8, 2023); Enzoic, *8 Ways to Mitigate Credential Stuffing Attacks*, https://www.enzoic.com/blog/8-ways-to-mitigate-credential-stuffing/ (last visited Nov. 8, 2023).

FILED DATE: 11/13/2023 4:06 PM 2023L011549

56. Additionally, 23andMe owed a duty to its customers to implement processes that would immediately detect a breach of its platform and to notify customers within a reasonable time after a breach. As demonstrated by the allegations above in Paragraphs 32-45, 23andMe did neither.

## PLAINTIFF-SPECIFIC ALLEGATIONS

57. Plaintiff created a 23andMe account because she wanted to learn more about her genetic ancestry given that her son suffers from a chronic disease. After purchasing and submitting a genetic test kit to 23andMe, she purchased 23andMe's genetic and ancestry services and accessed her reports on 23andMe's website. Plaintiff also opted in to 23andMe's DNA Relatives feature and was connected with thousands of other 23andMe customers, with whom she could share names, sex, dates of birth, profile photos, information on where each other lived, and a variety of genetic information including the persons' ancestral origin and DNA relatives.

58. On October 11, 2023, Plaintiff received the email notice of data breach described above in Paragraph 36 informing her of the breach of 23andMe's platform.

59. On October 23, 2023, Plaintiff received the email described above in Paragraph 37 informing her that her information was exposed in the breach through the malicious actor's exploitation of the DNA Relatives feature.

60. Plaintiff has suffered multiple types of harm as a result of 23andMe's failure to secure the information on its platform. First, Plaintiff suffered injury in the form of lost time dealing with the consequences of the theft of her information. This harm includes lost time spent researching the scope and potential impacts of the breach, time spent researching potential credit monitoring and other identity theft protection solutions, time spent monitoring her accounts and internet for signs of threats against her based on her ancestry, and time spent seeking legal counsel to help protect her rights.

FILED DATE: 11/13/2023 4:06 PM   2023L011549

61.     Second, Plaintiff suffered injury in the form of significant risk of future harm resulting from the theft of her PII, genetic data, and other highly sensitive and other confidential information. This risk is imminent and substantial. 23andMe has already informed Plaintiff that her information was exposed in the breach, and the genetic data, PII, and other confidential information is highly sensitive because it both presents a risk of identity theft and fraud and includes information that could lead to discrimination or targeting based on Plaintiff's ancestry. Further, this data has been and is being offered for sale on cybercrime forums by hackers specifically touting the ability to target consumers based on their ethnicity.

62.     Third, Plaintiff suffered injury in the form of loss of value of her PII. Such information is highly valuable to companies and is regularly bought and sold in both legitimate and illegitimate marketplaces. Plaintiff entrusted 23andMe with that information, and 23andMe was contractually prohibited from releasing it without Plaintiff's permission. As a result of 23andMe's failure to safeguard the data on its platform, Plaintiff's valuable PII was stolen without compensation.

63.     Fourth, Plaintiff has suffered and is suffering emotional distress in the form of increased anxiety over the theft and exposure of her data to criminals and malicious actors who may seek to steal her identity and/or target her based on her ancestry.

64.     Fifth, Plaintiff would not have used or paid for 23&Me's services if she had known 23&Me did not implement adequate safety mechanisms to protect her data.

65.     Thus, Plaintiff has already suffered actual injury and is under continuing risk of additional future injury resulting from the exposure of her PII, genetic data, and other confidential and highly sensitive information.

FILED DATE: 11/13/2023 4:06 PM   2023L011549

## CLASS ALLEGATIONS

66.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

67.     This action is brought and may properly proceed as a class action pursuant to 735 ILCS 5/2-801.

68.     Plaintiff seeks certification of a class (the "Class") that is composed of and defined as follows:

> All individuals in Illinois whose data was exposed to any unauthorized third party or parties as a result of the data breach experienced by 23andMe within the applicable statute of limitations preceding the filing of this action to the date of class certification.

69.     Excluded from the Class are 23andMe's officers and directors and current or former employees of 23andMe and their immediate family members, Plaintiff's counsel, and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and staff.

70.     **Numerosity**. The Class numbers over one hundred (100) persons and is so numerous that joinder of all members is impracticable. On information and belief, the exact number of members can be readily determined from information in the possession and control of 23andMe.

71.     **Commonality and Predominance**. 23andMe has engaged in the same conduct regarding all members of the Class. The injuries and damages to these class members also present questions of law and fact that are common to each class member, and that are common to the Class as a whole and will drive the litigation and predominate over any questions affecting only individual class members. Numerous common issues of fact and law exist, including, without limitation:

        a.   Whether 23andMe took reasonable precautions to safeguard the PII, genetic data, and other confidential and highly sensitive information with which Plaintiff and members of the Class entrusted it;

        b.   Whether 23andMe provided timely and sufficient notice of the breach to members of the Class;

FILED DATE: 11/13/2023 4:06 PM   2023L011549

c. Whether 23andMe's conduct was negligent, reckless, and/or intentional;

d. Whether 23andMe has been unjustly enriched;

e. Whether Plaintiff and members of the Class were harmed by 23andMe's failure to adequately secure the PII, genetic data, and other confidential and highly sensitive information with which Plaintiff and members of the Class entrusted it;

f. Whether 23&Me should be required to pay damages to Plaintiff and members of the Class; and

g. Whether injunctive or other equitable relief should be assessed against 23andMe.

72. **Adequacy of Representation**. Plaintiff is a member of the Class and will fully and adequately protect and represent the interests of all members of the Class because there are no conflicts between Plaintiff and those members of the Class, and because Plaintiff's counsel has the experience and skill to zealously advocate for the interests of all class members.

73. **Appropriateness**. There are substantial benefits to proceeding as a class action here that make class proceedings superior to any alternatives, including that it will provide a realistic means for members of the Class to recover damages; the damages suffered by members of the Class may be relatively small; it would be substantially less burdensome on the courts and the parties than numerous individual proceedings; many members of the Class may be unaware that they have legal recourse for the conduct alleged herein; and issues common to members of the Class can be effectively managed in a single proceeding. Further, maintenance of this suit as a class action is the superior means of disposing of the common questions which predominate herein. Individualized litigation presents a potential for inconsistent or contradictory judgments as well as substantial risk of adjudication with respect to individual members of the Class which, as a practical matter, would be dispositive of the interests of other members not parties to the adjudication, thereby substantially impairing and

FILED DATE: 11/13/2023 4:06 PM 2023L011549

impeding their ability to protect these interests. Plaintiff knows of no difficulty that could be encountered in the management of this litigation that would preclude its maintenance as a class action.

## CLAIMS

### FIRST CLAIM FOR RELIEF
### Illinois Genetic Information Privacy Act
### On Behalf of Plaintiff and the Class

74. Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

75. Plaintiff brings this claim on behalf of herself and the Class.

76. The Genetic Information Privacy Act (GIPA), 410 Ill. Comp. Stat. Ann. 513 *et seq.*, covers "[c]onfidentiality of genetic information" and provides in relevant part: "Except as otherwise provided in this Act, genetic testing and information derived from genetic testing is confidential and privileged and may be released only to the individual tested and to persons specifically authorized, in writing in accordance with Section 30, by that individual to receive the information." 410 Ill. Comp. Stat. Ann. 513/15(a).

77. GIPA incorporates the definition of "genetic information" from 45 C.F.R. § 160.103, which defines the term as "information about" an individual's "genetic tests," "[t]he genetic tests of family members of the individual," "[t]he manifestation of a disease or disorder in family members of such individual," or "[a]ny request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual."

78. GIPA also incorporates the definition of "genetic test" from 45 C.F.R. § 160.103, which defines the term as "an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, if the analysis detects genotypes, mutations, or chromosomal changes."

79. The test performed by 23andMe qualifies as "genetic testing" under GIPA because it detects, *inter alia*, genotypes and mutations.

FILED DATE: 11/13/2023 4:06 PM 2023L011549

80. The information compromised in the breach of 23andMe's platform included genetic information, genetic testing, and information derived from such information. For example, the origin of Plaintiff's ancestors, the list of other 23andMe users identified by 23andMe as Plaintiff's DNA relatives, and the information on the number of DNA segments Plaintiff shared with those other users were all information about, and derived from, the 23andMe genetic test Plaintiff purchased. Moreover, these results serve as a receipt of genetic services performed by 23andMe for Plaintiff.

81. 23andMe negligently and recklessly released Plaintiff and class members' genetic information, PII, and other confidential and highly sensitive PII by failing to adequately safeguard that information from malicious actors. Considering the number of data breaches and the sensitivity of the information it possessed, 23andMe was aware or should have been aware of the need to implement robust security measures to protect such information. It consciously refused to do so.

82. By negligently and recklessly releasing Plaintiff's and class members' information (including genetic testing and information derived from genetic testing performed by 23andMe) to unauthorized parties, as alleged above, 23andMe violated GIPA.

83. Accordingly, Plaintiff and each member of the Class are entitled to, and seek, damages of "$2,500 or actual damages, whichever is greater," for each negligent violation, or "$15,000 or actual damages, whichever is greater," for each intentional or reckless violation, as well as reasonable attorney's fees and costs. 410 Ill. Comp. Stat. Ann. 513/40.

84. Plaintiff and members of the Class are also authorized to obtain injunctive relief to prevent future violations. *Id.*

**SECOND CLAIM FOR RELIEF**
**Negligence**
**On Behalf of Plaintiff and the Class**

85. Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

86. Plaintiff brings this claim on behalf of herself and the Class.

FILED DATE: 11/13/2023 4:06 PM 2023L011549

87. At all times relevant to this action, 23andMe owed Plaintiff and class members a duty to act with reasonable care in securing and safeguarding their PII, genetic information (and information derived therefrom), health information, and other confidential and highly sensitive data. 23andMe assumed this obligation by conditioning its services on consumers' provision of such data and its acceptance of such data.

88. This duty required 23andME to, *inter alia*, (1) protect Plaintiff's and class members' data using commercially reasonable security procedures and processes that are compliant with industry standards and widely accepted preventative practices, (2) timely act on warnings or indications of data breaches, (3) promptly take action to halt, limit, and remediate the breach, and (4) promptly notify Plaintiff and affected class members of the breach.

89. 23andMe knew that the data shared by Plaintiff and class members was highly sensitive and valuable, and therefore subject to targeting by hackers. Moreover, credential stuffing is a common, well-documented, well-known, and preventable hacking technique by malicious actors, and there are many commercially reasonable countermeasures available to prevent this tactic. Thus, the breach was foreseeable.

90. Plaintiff and class members' willingness to entrust 23andMe with their sensitive data was predicated on the understanding that 23andMe would adequately secure their data and timely inform them of any exposure of such data. Further, only 23andMe could protect this data. Thus, 23andMe had a special relationship with Plaintiff and class members.

91. 23andMe breached its duty of reasonable care to Plaintiff and members of the Class by, *inter alia*, (1) failing to protect Plaintiff's and class members' data using commercially reasonable security procedures and processes that are compliant with industry standards and widely accepted preventative practices, (2) failing to timely act on warnings or indications of the data breach, (3) failing

FILED DATE: 11/13/2023 4:06 PM   2023L011549

to promptly take action to halt, limit, and remediate the breach, and (4) failing to promptly notify Plaintiff and affected class members of the breach.

92.     In light of the foreseeable risks and known threats to this data, 23andMe's failure to heed its duties to Plaintiff and members of the Class was negligent and reckless.

93.     As a proximate and foreseeable cause of 23andMe's breach of its duty of care, Plaintiff and members of the Class have suffered the damages alleged herein, including but not limited to the harms alleged in Paragraphs 60-65, and remain at imminent risk of additional harm.

94.     Even today, 23andMe has still not provided sufficient information to Plaintiff and members of the Class on the timeframe, duration, scope, and extent of the breach. Thus, 23andMe continues to breach its duty to timely disclose details regarding the breach to Plaintiff and members of the Class.

95.     Thus, as a direct and proximate cause of 23andMe's negligent release of their genetic information (including information derived from their genetic tests), PII, and other highly sensitive and confidential information, Plaintiff and members of the Class have suffered and will suffer harm.

96.     Plaintiff and the members of the Class accordingly seek compensation for, *inter alia*, the loss of the value of their PII, the costs of remediating the impacts of the breach, the resulting emotional distress, and all other relief permitted by law.

**THIRD CLAIM FOR RELIEF**
**Breach of Contract**
**On Behalf of Plaintiff and the Class**

97.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

98.     Plaintiff brings this claim on behalf of herself and the Class.

99.     Through their course of conduct, 23andMe, Plaintiff, and members of the Class entered into contracts for 23andMe to adequately safeguard Plaintiff's and class members' genetic

FILED DATE: 11/13/2023 4:06 PM 2023L011549

information (including information derived from genetic testing), PII, and other highly sensitive and confidential information in exchange for Plaintiff's paid use of 23andMe's services.

100.  23andMe required Plaintiff and members of the Class to provide their data as a condition of using 23andMe's services, and 23andMe solicited and invited Plaintiff and members of the Class to do so.

101.  By submitting their DNA tests to 23andMe, Plaintiff and members of the Class accepted 23andMe's offer, and there was a meeting of the minds.

102.  Plaintiff and members of the Class fully performed their end of the bargain by submitting their DNA tests to 23andMe, creating accounts, and paying for 23andMe's services.

103.  23andMe breached its obligations by failing to adequately safeguard the data submitted by Plaintiff and members of the Class.

104.  As a direct and proximate result of 23andMe's breach, Plaintiff and members of the Class have suffered the damages alleged herein and remain at imminent risk of additional harm.

105.  Plaintiff and the members of the Class accordingly seek compensation for, *inter alia*, the loss of the value of their PII, the costs of remediating the impacts of the breach, and the resulting emotional distress, and all other relief permitted by law.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**On Behalf of Plaintiff and the Class**

106.  Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

107.  Plaintiff alleges this claim in the alternative.

108.  Plaintiff brings this claim on behalf of herself and the Class.

109.  By the conduct alleged in this action, 23andMe has obtained financial benefits by unduly taking advantage of Plaintiff and members of the Class.

FILED DATE: 11/13/2023 4:06 PM 2023L011549

110. Despite its representations that it values of its customers' privacy, 23andMe negligently and recklessly failed to safeguard Plaintiff's and class members' genetic information (including information derived from genetic testing), PII, and other highly sensitive and confidential information. These representations led Plaintiff and members of the Class to reasonably believe 23andMe would adequately safeguard the data with which they entrusted 23andMe. And as a result, 23andMe profited from these representations. Plaintiff and members of the Class would not have purchased 23andME's services or entrusted 23andMe with their sensitive data had they known 23andMe would not adequately safeguard their information.

111. Under such circumstances, it would be inequitable to allow 23andMe to retain the financial benefits it obtained from Plaintiff and members of the Class. Plaintiff and class members did not receive the full benefit of their relationship with 23andMe because 23andMe's conduct resulted in the compromise of their data and the harms alleged in this action.

112. Because 23andMe obtained these benefits improperly and allowing it to retain these benefits would be inequitable under the circumstances, 23andMe is not entitled to retain any of these benefits.

113. Plaintiff and members of the Class accordingly seek an order requiring restitution and/or disgorgement of all profits, benefits, and other compensation obtained and retained by 23andMe by its failed promise to safeguard their data.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff demands judgment as follows:

1. For an order determining at the earliest possible time that this matter may proceed as a class action under 735 ILCS 5/2-801 and certifying this case as such;

2. For compensatory damages, statutory damages, restitution, and/or recovery of such relief as permitted by law in kind and amount;

FILED DATE: 11/13/2023 4:06 PM 2023L011549

3. For an injunction ordering 23andMe to comply with GIPA going forward and disclose to Plaintiff and members of the Class the extent and duration of the breach, the steps 23andMe has taken to safeguard their genetic information, PII, and other highly sensitive and confidential data and to mitigate the impacts of the breach;

4. For reasonable costs and attorneys' fees necessarily incurred herein pursuant to common law and/or statutory law;

5. For trial by jury on all issues; and

6. For such other or further relief as the Court deems Plaintiff and the putative Class are entitled.

Date: November 13, 2023

*/s/ Andrea Gold*
Andrea Gold (Bar No. 6282969)
Hassan A. Zavareei (application for *pro hac vice* admission forthcoming)
*hzavareei@tzlegal.com*
Glenn E. Chappell (application for *pro hac vice* admission forthcoming)
*gchappell@tzlegal.com*
David W. Lawler (application for *pro hac vice* admission forthcoming)
*dlawler@tzlegal.com*
Leora N. Friedman (application for *pro hac vice* admission forthcoming)
*lfriedman@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW
Suite 1010
Washington, D.C. 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

*Counsel for Plaintiff Michele Bacus and the proposed class*

Law Division Motion Section Initial Case Management Dates for CALENDARS (A,B,C,D,E,F,H,R,X,Z) will be heard In Person.
All other Law Division Initial Case Management Dates will be heard via Zoom
For more information and Zoom Meeting IDs go to https.//www.cookcountycourt,org/HOME?Zoom-Links?Agg4906_SelectTab/12
Court Date: 1/16/2024 9:15 AM

FILED
11/13/2023 4:06 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L011549
Calendar, N
25186968

FILED DATE: 11/13/2023 4:06 PM 2023L011549

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT
COOK COUNTY, ILLINOIS**

| | |
|---|---|
| **MICHELE BACUS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,** | |
| ***Plaintiff,*** | **Case No.:** 2023L011549 |
| **v.** | **Judge:** |
| **23ANDME, INC.,** | **JURY TRIAL DEMANDED** |
| ***Defendant.*** | |

## AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222(b)

The undersigned, one of the attorneys for the Plaintiff herein, being first duly sworn upon oath, states that to the best of his knowledge, information and belief formed after a reasonable inquiry, to the extent such inquiry is possible based upon current facts and circumstances, that the total money damages sought herein exceed Fifty Thousand Dollars ($50,000.00).

Date: November 13, 2023

*/s/ Andrea Gold*
Andrea Gold (Bar No. 6282969)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW
Suite 1010
Washington, D.C. 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

*Counsel for Plaintiff Michele Bacus and the proposed class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2023, I caused a copy of the foregoing **DECLARATION OF KEVIN J. QUILTY** to be served upon counsel in the manner described below:

VIA OVERNIGHT DELIVERY AND ELECTRONIC DELIVERY (EMAIL):

Andrea Gold (agold@tzlegal.com)
Hassan A. Zavareei (hzavareei@tzlegal.com)
Glenn E. Chappell (gchappekk@tzlegal.com)
David W. Lawler (dlawler@tzlegal.com)
Leora N. Friedman (lfriedman@tzlegal.com)

Tycko & Zavareei LLP
2000 Pennsylvania Avenue NW
Suite 100
Washington, D.C.
(202) 973-0900
*Counsel for Plaintiff*

Service was made by electronic delivery (email) on December 15, 2023. The email address I used for delivery was the same as listed by counsel for Plaintiff in that case.

Service was also made by overnight delivery on December 15, 2023. The address used for Bacus' counsel is the same address set forth in the Complaint.

I declare under the penalty of perjury of the laws of the United States of America and the State of Illinois that this Certificate of Service is correct, and executed on December 15, 2023.

*/s/ Kevin J. Quilty*
Kevin J. Quilty
Attorney for Defendant